RIVER BED FUND — TRANSFER OF MONEYS FROM COMMON SCHOOL PERMANENT FUND The Commissioners of the Land Office, under all applicable law, can legally remove or transfer from the Common School Permanent Fund those moneys derived from the sale of sand and gravel and oil and gas leases, delay rentals and royalties from lands underlying rivers and streams in the state which were considered to be navigable and deposit such moneys in another and different fund, to be designated "River Bed Fund", or some other appropriate name chosen by the Commissioners of the Land Office. The Attorney General has had under consideration your request for our opinion as follows: ". . . the legality and propriety of the removal, or transfer, from the Common School Permanent Fund of those moneys derived from the sale of sand and gravel and oil and gas leases, delay rentals and royalties from rivers and streams in the state which were considered to be navigable, and the deposit thereof in a different fund, to be designated "River Bed Fund", or by some similar appellation." This request was occasioned by language in our opinion of February 15, 1957, addressed to the Hon. Lawrence L. Irwin, Secretary to the Commissioners of the Land Office, wherein it was stated: "64 O.S. 289 [64-289] (1951), specifically provides for the disposition of moneys derived by the Commissioners of the Land Office from oil and gas leases on certain state owned lands, but not on river bed lands such as are involved here. Neither does 64 O.S. 290 [64-290], supra. However, it appears from your letter that such revenues have 'for many years' been uniformly deposited by the Commissioners of the Land Office in the Permanent Common School Fund of the state. This being true, and in the absence of a constitutional or statutory provision to the contrary, the Attorney General is of the opinion that the income derived by the Commissioners of the Land Office from oil and gas leases on river bed lands of navigable streams, which lands were not prior to statehood conveyed by the federal government, should continue to be deposited in the Permanent Common School Fund of the state, that is, unless and until our State Supreme Court holds to the contrary or the legislature otherwise provides," and language in our opinion No. 69-242, dated April 23, 1970, wherein we listed the nine (9) funds in the Land Office and said: "There probably should have been another fund for the deposit of money coming into the Commissioners of the Land Office from state lands other than those trust lands granted to the State by the Federal Government such as the income from oil and gas and sand and gravel from the bed of the Arkansas River. No fund was established for these funds, however, and as stated before, around $700,000.00 has been by the Commissioners of the Land Office, placed in the Common School Permanent Trust Fund. These funds belong to the State of Oklahoma in propriety sic capacity and the Commissioners of the Land Office are trustees of the same." Article XI, Sections 1 and Article XI, Section 2 Oklahoma Constitution provide in relevant part: "The State hereby accepts all grants of land and donations of money made by the United States under the provisions of the Enabling Act, and any other Acts of Congress, for the uses and purposes and upon the conditions, and under the limitations for which the same are granted or donated; and the faith of the State is hereby pledged to preserve such lands and moneys and all moneys derived from the sale of any of said lands as a sacred trust, and to keep the same for the uses and purposes for which they were granted or donated. "All proceeds of the sale of public lands that have heretofore been or may be hereafter given by the United States for the use and benefit of the common schools. . . the sum of five million dollars appropriated to the State for the use and benefit of the common schools . . . . the proceeds of all property that shall fall to the State by escheat, the proceeds of all gifts or donations to the State for common schools . . . shall constitute the permanent school fund, the income from which shall be used for the maintenance of the common schools in the State. The principal shall be deemed a trust fund held by the State, and shall forever remain inviolate. It may be increased, but shall never be diminished. . . ." The moneys described in your question were never legally a part of the Common School Permanent Fund but as we have said were placed in said fund by long continued administrative practice, acquiesced in by this office. Such moneys belong to the State in its proprietary capacity as stated above in the quote from our opinion No. 69-242. It is the opinion of the Attorney General your question should be answered as follows: The Commissioners of the Land Office, under all applicable law, can legally remove or transfer from the Common School Permanent Fund those moneys derived from the sale of sand and gravel and oil and gas leases, delay rentals and royalties from lands underlying rivers and streams in the state which were considered to be navigable and deposit such moneys in another and different fund, to be designated "River Bed Fund", or some other appropriate name chosen by the Commissioners of the Land Office. (W. J. Monroe)